## STATE v SIDRON et

Ohio Appeals, 8th Dist, Cuyahoga Co

No 18371. Decided Oct 27, 1941

Frank T. Cullitan, Pros. Atty., Cleveland; John Butler, Asst. Prosecutor, Cleveland, for plaintiff-appellee.

S. M. Young, Cleveland, for defendant-appellant Sidron.

Victor Cohen, Cleveland, for defendant-appellant Graves.

## OPINION

By MORGAN, J.

Bernard Sidron and Howard Graves were jointly indicted on a charge of robbery committed in Cuyahoga County on March 5, 1941. The trial was had before Judge Lausche, Judge of the Common Pleas Court of this County, a jury having been waived, and Judge Lausche found both defendants guilty of the crime as charged in the indictment. Both parties filed an appeal to this Court but only Bernard Sidron filed a brief and was represented by counsel at the hearing of the appeal.

The facts shown by the evidence are that George Pilzer, a jewelry salesman, left Detroit at 5:30 P. M. March 4, 1941, on the Mercury, and arrived in Cleveland about 8:20 P. M. He had with him a suitcase containing jewelry and on arrival registered at Hotel Cleveland. On the following morning about 8:55 A. M. he left Hotel Cleveland and went to The Cowell & Hubbard Company, a jewelry store, located at Euclid Avenue and East 13th St. He carried with him the suitcase containing the jewelry.

Pilzer arrived at The Cowell & Hubbard Company a little after 9:00 A. M., and finding that the store did not open until 9:30 A. M. he went across the street to The Webb C. Ball Company, another jewelry store. He returned

to The Cowell & Hubbard Company about 10:20 A. M. At about 11:20 A. M. Pilzer left Cowell & Hubbard Company through the side door fronting on East 13th Street. In his suitcase were diamonds, rubies and emeralds which he valued at wholesale at $15,000.00. Pilzer turned to walk south on the east side of East 13th Street toward Euclid Avenue and when he had reached a point about half way to Euclid Avenue, Pilzer testified that two men rushed at him with guns in their hands and turned him north toward Superior Avenue. In a scuffle he fell and his assailants seized the suitcase, then ran north on East 13th Street and he later saw them entering an automobile.

On the Sunday following, March 9, 1941, Pilzer in Mason City, Michigan, identified Howard Graves as one of the two men who assaulted him. He was unable to identify positively either defendant at the trial. No part of the jewelry taken was ever recovered.

At the time of the robbery, John E. Bernstein was walking south on the west side of East 13th Street toward Euclid Avenue and was almost opposite the place of the robbery. He testified that only one man assaulted Pilzer; that this man seized the suitcase from Pilzer, ran north, entered an automobile whose motor was running, having Michigan license plates. The car went north on East 13th Street and after going a few feet turned east into Dodge Court which was the first alley to the north.

Bernstein testified that he saw the robber clearly and his identification of Howard Graves as the robber was positive.

Mike Fillicco testified that as he was opening a garage door on the west side of East 13th Street on the morning of March 5, 1941, he heard someone say, "Get that guy." He looked and saw a man running north on East 13th Street with a suitcase in his hand and he had a good view of the robber when he was only some thirty feet away. He testified that the robber entered an automobile which was a "black sedan

with Michigan license plates." Fillicco was unable to say how many persons were in the car but he testified that **"the automobile into which the man ran, was moving when he boarded it"**.

Fillicco also at the trial identified Howard Graves as the robber and his identification was positive.

Frank Delahunte testified that he is an inspector for the City of Cleveland, with headquarters at East 24th Street and Rockwell Street; that about 11:30 A. M. on March 5, 1941, he walked out of his headquarters building and saw a Black Mercury car parked across the street on the south side of Rockwell Street, facing east and a little west of East 24th Street. A man got out of the car and came right across in front of the witness, about 15 or 20 feet away. He had a good view of the man and he positively identified Howard Graves as the man who got out of the black Mercury sedan.

The facts as testified to by Delahunte occurred only about ten minutes after the robbery. Delahunte said nothing about Graves having a suitcase as he walked away from the car.

Graves did not take the stand to deny any of the foregoing evidence in the case. It is our opinion that the guilt of Howard Graves ▉▉▉▉▉ was established beyond any doubt as the man who seized and made away with the suitcase containing the jewelry in this case. The fact that Graves virtually abandoned his appeal is a further indication of his guilt.

We come now to the appeal of Bernard Sidron. Inasmuch as no one identified Sidron as being at the scene of the robbery, his conviction was based on circumstantial evidence. We also do not attach much weight to the statement of Pilzer, the jewelry salesman, that he was attacked by two men. All the other witnesses who saw the robbery testified that only one man scuffled with Pilzer and seized his suitcase.

The evidence which connected Sidron with the robbery is substantially as follows:

On the afternoon of March 4, 1941, Sidron boarded the Mercury at Detroit and arrived in Cleveland about three hours later. This was the same train which brought Pilzer to Cleveland.

Dorothy Barnes, who was one of the three girl dancers employed at a night club known as Freddie's Cafe, corner of East 9th and Vincent Street, Cleveland, Ohio, testified that Sidron entered Freddie's Cafe on the evening of March 4, 1941, about 9:30 o'clock. She had met Sidron previously on February 20, 1941, at the cafe when Sidron was accompanied by Howard Graves. Shortly after Sidron entered the cafe on the evening of March 4, 1941, the witness, Dorothy Barnes, joined him and also another of the dancers known as Mickie Carlisle. Sidron told the girls that Graves was driving from Detroit and would be in about midnight. Later, around midnight, Graves appeared. Graves had a drink but Sidron excused himself saying that he had been ill and that he had an appointment about 8:30 in the morning. Graves also told the girls that he and Sidron had an appointment at 8:30 the next morning, and that they "hope as a result of the appointment to get enough money for Graves and Sidron to purchase the El Morrocco Night Club in Detroit."

Graves and Sidron remained at Freddie's Cafe until closing time, when the witness, Dorothy Barnes, left with Graves and Mickie Carlisle with Sidron. The four went across the street to Graves' car, a black Mercury sedan, which Graves proceeded to park at the Vincent Street Garage, a short distance to the west. The garage attendant afterwards testified, and the records of the garage were introduced to show that the car, a black Mercury sedan, with Michigan license plates "AC 6307-Mich." came in at 3:29 A. M. March 5th and that the car was later taken out of the garage at 10:29 A. M. It is important to note that the car was taken out a few minutes after Pilzer testified he had entered The Cowell & Hubbard Company on that morning.

Graves and Sidron with the girls, took a taxicab to another night club and later went to Fenway Hall Hotel where they registered as Mr. and Mrs. Howard Graves and Mr. and Mrs. Bernard Sidron. Dorothy Barnes occupied Room 912 with Graves and Mickie Carlisle another room with Sidron.

The witness, Dorothy Barnes, further testified that Graves left the hotel about 8:30 A. M. She next saw him shortly after the noon hour in Room 912 of the Fenway Hall Hotel. Sidron appeared at the room about 1:00 P. M., and had a short conference with Graves. Dorothy Barnes left Fenway Hall Hotel during the afternoon.

Graves called her by long distance telephone from Chicago about 11:00 P. M. the next evening, March 6, 1941. He told her he was in Chicago and was leaving for Detroit and would call her the next evening. On the following evening, about the same time, Graves called Miss Barnes from Three Rivers, Michigan.

"Mickie Carlisle" was a stage name, her real name being Ruth Elaine Johnston. She testified that she first met Graves and Sidron at Freddie's Cafe on the evening of February 20, 1941; she met Sidron at the cafe on the evening of March 4th at about 9:30 P. M. She testified that previously Graves and Sidron had told the girls that they intended to buy a night club in Detroit known as El Morrocco Club. The witness testified as to her conversation with Sidron on the evening of March 4th:

"We talked about this club and I asked him when they expected to get it, and Sidron said it depends on a business deal that they had that morning at 8:30."

Graves then came in about midnight and he also talked about the club that he and Sidron proposed buying in Detroit. Graves said, "they had a business appointment in the morning and the buying of the club depended on that." As to Sidron, she testified, "several times he mentioned going home, that he wanted to get some rest before this appointment in the morning."

The witness, Miss Johnston (Mickie Carlisle) went to Fenway Hall Hotel with Sidron and remained at the hotel until 6:30 A. M. She had not seen Graves or Sidron since that time.

The hotel clerk at Fenway Hall Hotel testified that the two couples came in at 5:30 A. M. on March 5th and registered as Mr. and Mrs. Graves and Mr. and Mrs. Sidron.

George Foraker is a Yellow Cab driver. He testified that about 8:30 A. M. March 5th, he picked up two men at Fenway Hall Hotel and was directed to go to Hotel Cleveland. He identified Sidron as one of the two men. He had previously identified him in a line-up of seven men at the police station. He was unable to identify Graves as the other man. The two men left the taxicab about 8:50 A. M. at the Marshall Building, which is opposite Hotel Cleveland.

There is no further direct evidence as to the movements of Sidron until he appeared at the Fenway Hall Hotel about 1:00 P. M. on the same day.

Edward Heinsohn testified that about 10:45 on the morning of March 5th, he was walking west on the north side of Euclid Avenue from Stouffer's Restaurant. He saw a black Mercury sedan with a Michigan license, going east on the south side of Euclid Avenue. The car crossed East 13th Street and between East 13th and E. 14th Street it made a "U" turn and proceeded west on Euclid Avenue. The witness proceeded west on Euclid Avenue to the Hotel Statler and in about ten minutes he returned on Euclid Avenue to East 13th Street and walked north. He then saw the same black Mercury sedan with the Michigan license plates parked on the east side of East 13th Street north of The Cowell & Hubbard Co., about half way to the alley known as Dodge Court. A man was in the car as he passed it. He later identified the Mercury sedan with license plates "AC 6037 Mich." at the Central Police Station as the same kind of a car that he saw on Euclid Avenue and E. 13th Street on the morning of March 5, 1941.

Within a few minutes after the rob-

bery, the police appeared on the scene and secured a description of the car used in the escape which was later broadcasted. Shortly after 1:00 P. M., James Reddy and Thomas White, members of the Cleveland Police Department, were cruising in their automobile and they saw parked along the south side of Rockwell Street just west of East 24th Street, a black Mercury sedan which seemed to answer to the broadcasted description of the robbers car. They stopped and examined the car which had license plates "AC 6307 Mich." In the rear seat they found a cardboard container with a number of bullets and also another box of bullets. In the glove compartment they found an envelope containing bullets, and loose bullets, and also bullets underneath the seat. The car was removed to the police station. They also found a parking stub marked "Vincent Street Garage 18033". This was the same number that was on the ticket given Graves for the black Mercury sedan which he parked at 3:29 A. M. March 5th, and which was taken out of the garage at 10:29 A. M., the morning of the same day.

About 12:30 P. M. the service manager of Fenway Hall Hotel was called to Room 912 and Graves gave him a suit to be pressed which was returned about an hour later. Graves and Sidron were also seen around Fenway Hall Hotel about 6:30 P. M. and Sidron was also seen at the hotel between 8:00 and 9:00 P. M. of the same day.

We next learn of the whereabouts of Graves and Sidron from Mary Ann Nash who testified that she was well acquainted with both Graves and Sidron. She had made a trip with Graves to California and also to Florida in December, 1940. Sidron was with them on the Florida trip and they returned to Detroit from Florida in January, 1941. The witness saw Graves in Detroit on March 6th which was the day following the robbery. Graves drove Miss Nash to Chicago on that day and there they met Sidron at the Glenn Hotel. She also testified that she was with Graves on the evening of

March 4th at the Eddystone Hotel and that Graves left the hotel that evening about 9:30 for Cleveland.

Graves and Sidron were arrested at White Pigeon, Michigan, on March 7th or 8th, and George Smythe, a member of the Cleveland Police Department, went on March 8th to Michigan with a warrant. He testified that Graves and Sidron were removed to County Jail at Mason City, Michigan, where he interviewed both of them separately.

Graves denied being in Cleveland on March 5th and denied knowing anything about the robbery or the black Mercury sedan in the possession of the Cleveland Police. Graves was searched and there was found in his possession $110.00 in cash, which consisted in part of five $20.00 bills, a driver's license for himself and one for Howard Baker of Sioux City, Iowa, and Howard Hibbs of Chicago, Illinois. Graves explained the fact that he carried three driver's licenses by stating that he was a gambler by profession and at times when he was gambling he did not want his associates to know his right name.

The money found on Graves were new bills issued by the Federal Reserve Bank of Chicago, and the letter and first five numbers were the same on all of the bills. When asked how he had obtained the money, Graves said he had won the money in a crap game in Chicago.

There was also found in Graves' automobile a photograph of the three girl dancers that were appearing at Freddie's Cafe, two of whom were Dorothy Barnes and Mickie Carlisle. The photograph shows the girls to be intelligent and easy to look at.

Sidron was also searched by policeman Smythe, and there was found on his person $752.00 in cash which consisted in part of three $100.00 bills and nine $20.00 bills. There was also found a card of M. V. Jackson, a salesman for the Russ-Dawson Automobile Agency, Detroit, Michigan, which had sold the black Mercury sedan, license number "AC 6037-Mich." Sidron made no explanation as to how he was in pos-

session of the money found on his person. He denied he was in Cleveland on March 5th, the day of the robbery. He said he was in Chicago on that day as he had placed some baggage in the baggage room of Hotel Stevens. He refused to say where he was staying in Chicago because he said he did not wish some of his friends to become implicated. He also said that he met Graves in a beer parlor in Rush Street in Chicago, about 2:30 P. M. March 5th, the day of the robbery. These statements by Sidron were, of course, wholly false.

The money found in the possession of Sidron, was also issued by the Federal Reserve Bank of Chicago and were all new bills.

Only two witnesses testified for the defense. They testified that together they saw the robbery from Euclid Avenue at or near East 13th Street. They were unable to identify Graves as the robber. The other evidence in the case already given, however, proved Graves to be the robber beyond any doubt.

Neither Graves nor Sidron took the stand.

There can hardly be any doubt from the evidence that this robbery was not a one-man job. Some person must have been shadowing Pilzer when he entered The Cowell & Hubbard Company, because this information must have been relayed to Graves, who a few minutes afterwards, took his black Mercury sedan, the robbery car, from the Vincent Street garage. We know that this car was driven east on Euclid and then north on the east side of East 13th Street and parked just north of The Cowell & Hubbard Company store where it remained until the robbery. A witness saw the parked car shortly before the robbery and there was a man in the car at the time. No witness testified to seeing anyone in the car when it was boarded by Graves, the robber, but Mike Fillicco who was on the west side of East 13th Street, just opposite the parked Mercury sedan, testified that "the automobile into which the man ran, was moving when he boarded it". This is direct evidence

that there was a man in the car before Graves entered it.

On cross-examination the witness was asked this question:

"Q. The automobile was running at the time?
A. Yes."

This answer was not inconsistent with his evidence in chief. Accordingly, the statement of the witness in chief that "the car was moving when Graves entered it" was not weakened on cross-examination.

Graves was seen leaving this car less than ten minutes after the robbery, after parking the car on the south side of Rockwell Street just east of East 24th Street, about twelve city blocks from the scene of the robbery.

It is a fair assumption that if Graves was carrying a suitcase when leaving the car, that fact would have been developed in the evidence. As he did not have the suitcase containing the stolen jewelry with him at that time, he must have disposed of it in some way within the few minutes that elapsed after the robbery. It was virtually impossible for him to have done this without the active assistance of another person, his confederate in the robbery.

Sidron came to Cleveland on the same train as Pilzer. Graves did not leave Detroit until nearly one hour after Sidron had reached Cleveland. At 9:30 P. M. the same evening, Sidron showed up at Freddie's Cafe and met Dorothy Barnes and Mickie Carlisle. The principal topic of his conversation with the two girls that evening both before and after Graves' later appearance, related to the night club that Graves and Sidron were proposing to buy in Detroit. The girls were interested because they had been promised an engagement at the night club after the purchase. Whether or not they would be able to make the purchase, Sidron told the girls, depended upon the outcome of a business deal that Graves and Sidron had on at 8:30 the next morning. Sidron several times mentioned that he wanted to get some rest "before this appoint-

ment in the morning". This evidence, not based on inference, but from Sidron's own mouth, shows conclusively that Graves and Sidron came to Cleveland on a joint enterprise; that out of this enterprise they hoped to get a substantial sum of money and that the money was to be used in their joint purchase of the El Morrocco Night Club in Detroit.

At 8:30 the next morning, Sidron took a taxicab to Hotel Cleveland where Pilzer was staying. Within an hour after the robbery Sidron and Graves were in conference at Fenway Hall Hotel. The next day Graves drove from Detroit to Chicago and found Sidron waiting for him. In two more days both were still together and were arrested at White Pigeon, Michigan. $100 of clean new bills of the Federal Reserve Bank of Chicago were found on Graves' person . A much larger sum, $752.00 in cash, most of which was also in clean new bills of the Federal Reserve Bank of Chicago, was found on Sidron's person. No satisfactory explanation was given by Sidron as to how he obtained this money, and Graves' statement that he won his money in a crap game in Chicago is too ridiculous to be believed.

Sidron lied when he said he was in Chicago on the day of the robbery; lied when he said he met Graves in Chicago on that day; lied when he denied that he was in Cleveland on the day of the robbery.

As already stated, Sidron did not take the stand. There was evidence introduced by the state which called loudly for an explanation, if Sidron is innocent. What was the business appointment that Graves and Sidron had together on the morning of the robbery, by which they hoped to get enough money to buy the night club in Detroit? What business required Sidron's presence at Hotel Cleveland that morning? Why was he meeting with Graves in Chicago the day following the robbery? Where and how did he get the large sum of money found on his person when he was arrested? Why did he falsely deny that he was in

Cleveland on the day of the robbery? Inasmuch as the jewels were never found, it is much more than a suspicion, in the absence of any explanation, that Graves and Sidron were in Chicago on the day following the robbery to turn the jewelry into cash at some "fence" and that the money found on their persons two days later represented a part of the proceeds of the robbery.

At the conclusion of the judgment pronounced by Judge Lausche, in this case, he turned to Graves and Sidron and said:

"Mr. Graves is positively proved to be guilty. Mr. Sidron is proved to be guilty beyond a reasonable doubt. When I say that to you, Mr. Sidron, I say it with a perfect ease of conscience and with a deep-seated conviction based upon the testimony that has been offered, that you are guilty of this offense. * * * I say to you both that I have a living conviction to a moral certainty, that is to a certainty based upon my individual right and wrong, that you are guilty of this charge. That will be the finding of the court."

Immediately following these remarks, Judge Lausche turned to Graves and Sidron and said:

"Is there anything you desire to say to the court, Mr. Graves? Mr. Sidron?

To this question Mr. Graves remained silent. Mr. Sidron spoke up and said, "No, sir".

With the words of Judge Lausche still ringing in his ears, that he had been found guilty of this crime beyond a reasonable doubt, if Sidron had been innocent would he have been able to remain silent when Judge Lausche gave him an opportunity to say anything he desired to the court? We think not. It was the consciousness of guilt that caused Sidron, when given the opportunity to make any statement he wished to make, to tell the court that he had nothing to say.

The trial judge was careful at the trial to differentiate between the two defendants and to admit evidence of conversations only as to one when the other was not present, and also to limit documentary evidence to the defendant affected by it. From this fact counsel for Sidron argued that the trial judge did not believe that any conspiracy had been proved in this case, otherwise all the evidence would have been admissible against both defendants.

We do not so interpret Judge Lausche's ruling. It appears to us that the judge limited the evidence as he did from an excess of caution and by reason of his determination to exercise meticulous care to give both defendants a fair trial and to avoid the possibility of error creeping into the case. These defendants, however, were so closely associated that very little evidence is lost against either by limiting a small part of the evidence to only one defendant. No person other than the two defendants, so far as is shown by this record, was even remotely connected with this robbery.

We are in agreement with the trial judge that both defendants were convicted, not on just a suspicion or possibility of guilt but beyond a reasonable doubt.

We do not find any error in the record and the judgment is therefore affirmed.

LIEGHLEY, PJ., SKEEL, J., concur.